IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUAN ANTONIO MORENO,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. 2:11-cv-2454 CKD

<u>ORDER</u>

/

    Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment and remand for further proceedings under sentence four of 42 U.S.C. § 405(g).

<u>BACKGROUND</u>

    Plaintiff, who was born in 1966, applied for DIB on August 14, 2008, alleging disability beginning July 28, 2007. Administrative Transcript ("AT") 20; Dkt. 15-1 at 4. Plaintiff alleges that he is unable to work on account of a back injury resulting in nerve damage; anxiety; depression; memory problems; headaches; chronic pain in his back, neck and the left side of his body; numbness in the left side of his body; and pain in his left wrist. Dkt. 15-1 at 4; AT 131-134,

1

135, 140. In a decision dated April 23, 2010, an Administrative Law Judge ("ALJ") determined that plaintiff was not disabled.[1] Tr. 20-29. The ALJ made the following findings (citations to 20 C.F.R. omitted):

    1.        The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

    2.        The claimant has not engaged in substantial gainful activity since July 28, 2007

    3.        The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; left carpal tunnel syndrome; and pain disorder.

    4.        The claimant does not have an impairment or combinations of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift 10 pounds occasionally and frequently; stand/walk 4 hour/8 hour workday; sit 6 hours/8 hour workday; occasionally bend, stoop, twist, squat, kneel, crawl and climb stairs; never climb ladders, ropes or scaffolding; never work around heights or hazardous moving machinery; occasionally handle/finger with left (non-dominant) upper extremity; and, constantly handle/finger with right (dominant) upper extremity.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on February 23, 1966 and was 41 years old, which is defined as a "younger individual 45-49," on the alleged disability onset date.

8. The claimant has a "marginal" education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 28, 2007, through the date of this decision.

AT 22-29.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) despite evidence to the contrary, the ALJ did not find that plaintiff suffers from a minimally severe mental impairment; (2) the ALJ improperly rejected the opinion of Dr. Adegoke Adeyomo; (3) the ALJ failed to establish that there is other work in the national economy that plaintiff could perform; and (4) the ALJ failed to properly consider the lay evidence of record. Dkt. 15-1. The court addresses each of these issues in turn.

////

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

DISCUSSION

    A.    MEDICAL TESTIMONY OF MENTAL IMPAIRMENT

At step two of the disability evaluation process the Commissioner must determine whether plaintiff has a medically determinable impairment that is "severe" or a combination of impairments that are "severe." 20 CFR § 404.1520(c). In evaluating whether or not a mental

4

impairment is "severe," the ALJ considers the degree of limitation imposed by the impairment in four functional areas:

>1) Activities of daily living
>
>2) Social functioning
>
>3) Concentration, persistence, or pace
>
>4) Episodes of decompensation

20 CFR § 404.1520a(c)(3). If the degree of limitation in the first three functional areas is rated as "none" or "mild" and "none" in the fourth area, it will generally be concluded that the impairment is not severe unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities. 20 CFR § 404.1520a(d)(1).

A determination that an individual's impairment (or combination thereof) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) and an informed judgment about the limitations and restrictions it imposes on the individual's mental ability to do basic work activities. Social Security Ruling ("SSR") 96-3p. Examples of these activities include: seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. SSR 85-28. In sum, great care should be exercised in applying the not severe impairment concept, (SSR 85-28) because step two is a de minimis screening device to dispose of groundless claims only. See Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

Here, the ALJ found that plaintiff's claimed mental impairments of adjustment disorder, dysthymia and anxiety were not severe in that they would no more than minimally impact functioning for a twelve consecutive month period of time. AT 24. Plaintiff claims that in reaching that conclusion the ALJ failed to properly consider the testimony of Drs. Klein, Scaramozzino, Adeyomo, and Lopez, all of whom provided findings inconsistent with the ALJ's position. See Dkt. 15-1 at 18-22; Dkt. 22 at 2-4.

In determining severity at the second step of the disability evaluation, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on plaintiff's ability to do basic work activities. SSR 85-28. The weight given to medical opinions depends in part on whether they are proffered by a treating, examining or non-examining doctor. See Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). As such, superior weight should be given to the opinion of a treating source, who has a greater opportunity to know and observe the patient as an individual. See Lester, 81 F.3d at 831, Smolen v. Charter, 80 F.3d 1273, 1285 (9th Cir. 1996). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. See Lester, 81 F.3d at 830, 20 C.F.R. §416.927(d)(1).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers the presence of contradictory opinions in the record and whether clinical findings support the opinions. See Lester, 81 F.3d at 829-31. An ALJ may reject the uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Id at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id at 830. The ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.

    1. Dr. Klein

On December 13, 2008, state agency reviewing psychologist Dr. Paul Klein conducted a psychiatric review of plaintiff. AT 460. Dr. Klein ultimately concluded that plaintiff's affective disorder did not constitute a severe impairment. AT 460. The ALJ accepted

6

this conclusion in reaching the determination that plaintiff's mental impairment was not severe for purposes of the step two analysis.  AT 23, 24.  Plaintiff argues that some of the functional limitations contained within Dr. Klein's evaluation are inconsistent with the conclusion that plaintiff's mental impairments "do not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities," and the ALJ failed to provide specific and legitimate reasons for discounting these findings.  Dkt. 15-1 at 19; AT 22.  In particular, plaintiff points to Dr. Klein's findings that plaintiff is moderately limited in activities of daily living and in his ability to maintain concentration, pace and persistence for extended periods of time and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  Dkt. 15-1 at 19; AT 468, 471.

The evaluation Dr. Klein completed parroted the criteria used for assessing whether a severe impairment exists under step *three* of the disability evaluation — which sets a much higher standard for finding a severe impairment.  AT 460; see 20 CFR 404.1520(d), 20 CFR Pt. 404, Supt. P, App. 1 (requiring at least two functional limitations that result in *marked* impairment or difficulty).  Thus, Dr. Klein's conclusion on the severity of plaintiff's mental impairment did not provide an appropriate metric by which to assess plaintiff's impairment at step two of the analysis.  In accepting Dr. Klein's conclusion the ALJ failed to consider the findings of moderate limitation which underlie it and which are inconsistent with the determination that plaintiff's mental impairments do not more than minimally limit the ability to perform basic, mental work activities.  See AT 23, 24.

It is true that an ALJ may properly rely upon only certain portions of a medical opinion while rejecting other parts.  See e.g., Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence).  However, in order to reject any portion of this examining physician's opinion, the ALJ needed to provide specific and legitimate reasons supported by substantial evidence for doing so.  Id.  No such reasons were provided.  If the court considers the moderate limitations found by Dr.

7

Klein on plaintiff's ability to maintain concentration, pace and persistence for extended periods of time and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, plaintiff's functional limitations rise above the minimal level required for a finding of "not severe" under step two of the disability evaluation.  See SSR 96-3p.

This error is not harmless as accepting these findings would substantially affect the analysis at step four and five.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (generally, where the ALJ fails to properly reject the opinion of an examining physician, the opinion is credited as a matter of law).  Significantly, it alters the mental component of plaintiff's Residual Functional Capacity ("RFC") assessment and the availability of jobs that plaintiff can perform.[2] On remand, the ALJ must consider Dr. Klein's findings of moderate limitations and whether they result in more than minimal limitation to plaintiff's occupational functioning.

### 2. Dr. Scaramozzino

On November 15, 2008, Dr. James Scaramozzino — a clinical psychologist — conducted a consultative psychiatric evaluation of plaintiff.  AT 408.  Again, plaintiff contends that the ALJ's finding that plaintiff's mental impairment was not severe is inconsistent with certain findings contained in Dr. Scaramozzino's report.  Dkt. 15-1 at 19.

The ALJ considered and credited Dr. Scaramozzino's opinion and discussed findings from the doctor's mental status examination, prognosis, and medical source statement ("MSS").  AT 23.  In particular, the examination showed that plaintiff's stream of mental activity was within normal limits based on findings that his speech was logical, coherent and concise; his articulation was clear; and his velocity and volume of speech were normal.  AT 23, 410.  The examination also revealed that plaintiff's recent and remote memory was intact and his ability to concentrate was within normal limits.  Dr. Scaramozzino assessed plaintiff with a Global

---

[2] The ALJ included no mental limitation component to plaintiff's RFC assessment and the vocational expert opined that a significant number of jobs existed in the national economy that plaintiff could perform.

Assessment of Functioning[3] score of 62. Id. Plaintiff was diagnosed with pain and adjustment disorder and a depressed mood; but his symptom severity was within the mild range. AT 412.

Nevertheless, Dr. Scaramozzino found plaintiff's ability to complete a normal workday at a constant pace was moderately limited because of pain and depression, and the likelihood of him emotionally deteriorating in a work environment was fair. Id. The ALJ did not consider either of these limitations but both findings would present more than minimal limitations to plaintiff's occupational functioning. Because it is these types of functional limitations which the Regulations require the ALJ to specially consider, the court cannot say that the failure to do so is harmless error. See SSR 96-3p (basic work factors are inherent in determining that an individual does not have a severe medical impairment at step two). On remand the ALJ must consider these two functional limitations and reconcile them with the minimal standard of severity imposed at step two of the disability evaluation.

### 3. Dr. Lopez

In his reply brief, plaintiff points to portions of Dr. Lopez's reports which, he claims, are also inconsistent with the ALJ's conclusion that plaintiff has no severe mental impairment at step two of the disability evaluation. Dr. Lopez conducted two evaluations of plaintiff over the course of 18 months — both of which the ALJ claims to have credited. See AT 416, 528.

From the first examination, the ALJ noted plaintiff's complaints of daily depression, crying, low energy, low self-esteem, poor sleep, passive suicide ideation, a 20 pound

---

[3]The Global Assessment of Functioning ("GAF") is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id. A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school function (e.g, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Id.

weight gain; and poor memory and concentration. AT 23. It was further noted that psychotropic medication had not improved plaintiff's state and he appeared distraught, depressed and tearful throughout the interview. Id. Plaintiff was diagnosed with dysthymic disorder and his GAF was assessed at 59. Id. From his second examination, the ALJ again considered that plaintiff appeared depressed and tearful throughout the interview. AT 24. The Commissioner also considered that the self-reporting psychological testing conducted on plaintiff should be interpreted with caution as there was the possibility that plaintiff exaggerated his present situation and problems (AT 538); that plaintiff was only mildly impaired in activities of daily living and concentration and mild to moderately impaired in his social functioning (AT 540); and that plaintiff was assessed a GAF score of 58. AT 24.

At step two, evidence of the functionally limiting effects of plaintiff's ability to engage in occupational activities must be carefully evaluated and an informed judgment rendered as to the limitations and restrictions posed by the mental impairment. SSR 96-3p. Here, the ALJ does not appear to have engaged in such an evaluation. For example, the Commissioner notes plaintiff's GAF scores — both of which indicate *moderate* impairment — but provides no explanation as to why this does not rise above a *minimal* limitation on plaintiff's occupational functioning. See DSM IV-TR at 34. The ALJ also fails to explain how a finding that plaintiff was mild to moderately impaired in his social functioning could be reconciled with the "de minimis screening" standard of step two.

Although the ALJ highlighted that some psychological testing results might appear overly severe on account of the self-reporting nature of such tests, Dr. Lopez concludes — in both of his evaluations — that plaintiff nevertheless suffers from a "severe mental disorder" and diagnosed plaintiff with a dysthymic disorder, i.e. chronic depression. AT 424, 429 535, 539. In both evaluations, Dr. Lopez also observed that plaintiff appeared distraught and depressed and was tearful throughout the interview. AT 429, 533. All of these findings are inconsistent with the ALJ's determination that plaintiff's mental impairment no more than minimally limits his

occupational functioning, but the ALJ provides no evaluation or judgment of how that determination was reached in light of them.  See SSR 96-3p.

The error was not harmless because considering Dr. Lopez's diagnosis and the findings underlying it substantially affects the disability analysis at steps four and five, particularly whether plaintiff's RFC assessment should have include an mental impairment component.

4. Dr. Adeyomo

Dr. Adegoke Adeyomo began treating plaintiff in April of 2008 and continued to do so "continuously and as needed" through February 19, 2010.  AT 603.  In his MSS, Dr. Adeyomo diagnosed plaintiff with major depressive disorder and chronic pain and assessed a GAF score of 45.[4]  AT 603.  Plaintiff's symptoms included anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight changes; decreased energy; feelings of guilt or worthlessness; mood disturbance; and emotional withdrawal or isolation.  AT 604.  Dr. Adeyomo opined that plaintiff was moderately limited[5] in activities of daily living, maintaining social functioning, and concentration, persistence or pace.  AT 605.  Dr. Adeyomo further reported that plaintiff had four or more episodes of decompensation within a 12 month period, each of which lasted at least two weeks.  Id.  Finally, Dr. Adeyomo opined that plaintiff would likely be absent from work more than four days per month as a result of his impairment which was expected to last at least 12 months.  AT 606.

The ALJ credited the opinions of Drs. Scaramozzino, Lopez and Klein over that of Dr. Adeyomo (AT 24) and plaintiff claims that in doing so the ALJ failed to provide "specific and legitimate reasons" supported by substantial evidence.  Dkt. 15-1 at 22.

---

[4] A GAF score of 45 indicates serious symptoms or serious impairment in school, social or occupational functioning.  DSM-IV-TR at 34.

[5] The definition of "moderately limited" employed by Dr. Adeyomo includes "substantial[] impair[ment] in terms of speed and accuracy" of the designated work-related function such that it cannot be performed "more than 2 to 3 hours in an 8-hour workday."  AT 605.

Plaintiff does not dispute that Dr. Adeyomo's opinion is contradicted by other doctors in the record.  The ALJ credited these other opinions (Drs. Lopez, Scaramozzino, and Klein) over Dr. Adeyomo's based on findings that Dr. Adeyomo's opinion was unsupported by medical signs and laboratory findings; and inconsistent with the other medical evidence in the record.  AT 24.  Plaintiff responds that there is no substantial evidence supporting the ALJ's position and points to specific evidence refuting the ALJ's more specific findings.

The contrary opinions of examining doctors Klein, Scaramozzino and Lopez may serve as specific and legitimate reasons for rejecting the opinion of Dr. Adeyomo.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  However, the reasons provided must still be specific and legitimate.  Considering the reasons provided, the ALJ did not put forth legitimate explanations supported by substantial evidence for discounting the opinion of this treating physician.

The first reason offered by the ALJ for rejecting Dr. Adeyomo's opinions is that the treatment prescribed by the doctor was conservative and inconsistent with what the expected medical response would be if plaintiff's limitations were as severe as described by Dr. Adeyomo.  AT 24.  Plaintiff responds that the recognized treatment for a major depressive disorder is naturally conservative, consisting primarily of psychotropic drugs and therapy.  Dkt. 15-1 at 24.  Unlike physical ailments, depression is not a condition which is addressed by a progression of increasingly aggressive or invasive procedures, such as surgery.  Rather, in all but the most extreme cases, depression is treated through a combination of medication and psychotherapy.  See National Institute of Public Health, http://www.nimh.nih.gov/health/publications/depression/complete-index.html.  If one type of medication (or combination thereof) proves ineffective, others are tried until a successful result is obtained.  Id.  The other examining physicians, discussed above, either prescribed or suggested medication for plaintiff along with psychotherapy — the same approach taken by Dr. Adeyomo.  The ALJ does not indicate what an expected course of treatment might look like in light of Dr.

Adeyomo's findings. Nor does the record contain evidence of the availability or suitability of other treatment. Thus, rejecting Dr. Adeyomo's opinion on account of the "conservative" treatment he prescribed, was not a legitimate reason supported by substantial evidence and was error. See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) (rejecting a physician's conclusion by merely stating that the objective factors point toward an adverse conclusion but not relating any of the factors to specific medical opinions and findings, is inadequate).

The ALJ also rejected Dr. Adeyomo's opinion for lack of objective support, noting that the MSS appears to be based primarily on the subjective statements of the plaintiff. AT 24; see Tonapetyan, 242 F.3d at 1149 (ALJ is free to disregard opinion premised on claimant's subjective complaints). The symptoms identified by Dr. Adeyomo's MSS include a pervasive loss of interest in all activities; appetite disturbance with weight change; decreased energy; feelings of guilt or worthlessness; mood disturbance; and emotional withdrawal or isolation. AT 604. Additionally, plaintiff points to symptoms contained in Dr. Adeyomo's other progress notes which include increased sensitivity, nightmares, anxiety, depression, crying, uncontrollable anger, feeling insecure, depression and fearing for his family's financial security. AT 348, 351, 352, 489. Although the ALJ contends that there is insufficient "objective observation" or "appropriate diagnostic examination," these are precisely the symptoms upon which a diagnosis of Major Depressive Disorder is based. See DSM-IV-TR at 356. There are no laboratory findings that are diagnostic of depression. Id. at 352. And, as noted by other examining physicians in the record, the psychological tests conducted to assess symptoms are largely self-reporting in nature. See e.g., AT 423-424, 534-535. Objective clinical findings include whether the patient presents with tearfulness, excessive worry, anxiety and depression — all of which were observed by Dr. Adeyomo. See DSM-IV-TR at 352. Additionally, these symptoms are very similar to those that appear in the reports and opinions of other examining physicians. See e.g., AT 422, 470, 533. Accordingly, the ALJ did not provide a legitimate reason for rejecting Dr. Adeyomo's opinion on this ground.

The error committed by the ALJ in improperly rejecting Dr. Adeyomo's opinion is not harmless because the findings and conclusions contained in his report indicate a mental impairment that would more than minimally impact plaintiff's functioning. See SSR 96-3p. Specifically, Dr. Adeyomo's assessment of a GAF score of 45 indicates serious symptoms and serious impairment in social or occupational functioning. AT 603; See DSM-IV-TR at 34. Additionally, Dr. Adeyomo's diagnoses of Major Depressive Disorder and Post Traumatic Stress Disorder would substantially affect the disability evaluation at steps three, four and five as well. AT 348. On remand, the ALJ must properly consider all of Dr. Adeyomo's findings and either set forth legitimate reasons for rejecting them or consider their effect on the step two analysis and the remainder of the disability determination.

B. VOCATIONAL EXPERT AND LAY WITNESS TESTIMONY

Plaintiff raises additional arguments with respect to the accuracy of the hypothetical posed to the vocational expert and whether the job titles provided by the vocational expert were consistent with the definition of such jobs in the United States Department of Labor, Employment & Training Administration's Dictionary of Occupational Titles.[6] Plaintiff also complains that the ALJ failed to consider the lay witness statements of plaintiff's friends who testified regarding plaintiff's behavior and his interactions with them. Because the ALJ committed error at step two of the disability evaluation in failing to consider several findings from Drs. Klein, Scaramozzino, Lopez and Adeyomo, the court need not reach these further arguments. The ALJ is, however, expected to consider the effects of each of these doctors' findings on

---

[6]The United States Department of Labor, Employment & Training Administration's Dictionary of Occupational Titles ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements and is a primary source of reliable job information for the Commissioner. 20 C.F.R. § 404.1566(d)(1); see Johnson v. Shalala, 60 F.3d 1428 (9th Cir. 1995) (reliance on the DOT acts as a presumption that may be rebutted by the testimony of a vocational expert); see also SSR 00-4p (providing that when there is an apparent unresolved conflict between the vocational expert's testimony and the DOT, the ALJ must clarify the discrepancy).

1 vocational expert testimony and the testimony of lay witnesses.

2 <u>CONCLUSION</u>

3 For the reasons stated herein, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and for further findings addressing the deficiencies noted above. Accordingly, IT IS HEREBY ORDERED that:

    1. Plaintiff's motion for summary judgment (dkt. 15-1) is GRANTED;

    2. The Commissioner's cross-motion for summary judgment (dkt. 21) is DENIED;

    3. This matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) in accordance with this order; and

    4. Judgment is entered for the plaintiff.

Dated: February 13, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

ckd9